A. M. LEVINSON FURS, INC., Appellant, *v.* CENTENNIAL INSURANCE COMPANY, Respondent.

First Department, December 20, 1955.

*Benedict Ginsberg* of counsel (*Michael M. Platzman* with him on the brief; *Joseph J. Schwartzman,* attorney), for appellant.

*George I. Janow* for respondent.

Cox, J.   Plaintiff, a retail dealer in furs and fur garments, sues to recover the value of a mink coat under a policy of insurance issued by defendant, insuring plaintiff against loss.   The basic issue is whether plaintiff sustained a recoverable loss.

It was plaintiff's business practice to offer its furs for sale in various resort areas during the different seasons.   For this purpose it rented space for brief periods in establishments operated by local merchants.   Its itinerary included Bar Harbor, Maine, where it utilized space in premises operated by Mrs. Elizabeth Pocker for the retail sale of ladies' wearing apparel. Mrs. Pocker conducted her business in two adjoining stores connected by a door in the dividing wall.   She used one of the stores for selling purposes and the other as a workshop.

On August 28, 1949, plaintiff's president, Louis Levinson, arrived at Mrs. Pocker's premises with a quantity of furs which he placed in the part of the selling store assigned to him.   As the furs required certain preliminary work before they could be offered for sale, Levinson spent the next two days working on the furs.   In the evening of the second day he placed the furs in a showcase made available to him in the selling store and left the premises by means of the front entrance to the workshop. Before leaving he had bolted the front and rear entrances to the selling store; had locked the door connecting the two stores; and had given Mrs. Pocker the key to the connecting door.   When he returned the following morning he found the connecting door ajar and marks around it indicating forcible entry.   He immediately checked his furs and found that one of the mink coats was missing.   At the time of the loss, work on the furs had not been completed.

Defendant's policy was an " all-risk " floater policy which, with certain exceptions, insured plaintiff against all types of loss while the furs were away from plaintiff's own business premises.   One of the exceptions provided that in the event of loss due to theft while the furs were " on exhibition in hotels, lobbies or stores " there would be no recovery under the policy unless the theft was " due to forcible entry into the premises " and there were visible marks at the point of entry.

In this action on the policy plaintiff seeks to recover on either of the two causes of action pleaded in the complaint.   The first cause of action is based upon a loss sustained while the coat was

not on exhibition. The second is predicated upon a theft while the coat was on exhibition within the meaning of the policy. At the end of the entire case the trial court dismissed the first cause of action holding as a matter of law that the coat was on exhibition at the time of the theft. The issues under the second cause of action were submitted to the jury and resulted in a verdict of $1,550 in favor of the plaintiff, which was subsequently set aside and that cause of action also dismissed.

The trial court properly dismissed the second cause of action since the connecting door was not a point of entry to the premises from which the coat was stolen. Plaintiff did not have exclusive use of the selling store but shared part of it with Mrs. Pocker. Nor was it limited to the use of the selling store since Levinson arrived and left by means of the front entrance to the workshop. It is clear from the evidence that the space allotted to plaintiff was part of the entire premises in which Mrs. Pocker conducted her own business. These premises consisted of both stores. Consequently the connecting door was within the premises and could not constitute a point of entry to them.

The trial court, however, ought not to have dismissed the first cause of action. In doing so the court construed the word "exhibition" as used in the policy to mean, to expose or display for the purpose of sale. Apparently the court adopted this interpretation because the policy exceptions as applied to this case involved exhibition in stores.

It is a well-settled rule of construction that in interpreting provisions of insurance policies the language employed is to be given its ordinary meaning, such as an average person of ordinary intelligence would attach to it (*Abrams* v. *Great Amer. Ins. Co.,* 269 N. Y. 90; *McGrail* v. *Equitable Life Assur. Soc. of U. S.,* 292 N. Y. 419; *Morgan* v. *Greater N. Y. Taxpayers Mut. Ins. Assn.,* 305 N. Y. 243). The word "exhibition" is a common word in general use and not a word of art with legalistic implications. The dictionary definition is to hold up or display for public inspection. Thus, an article on exhibition is not necessarily being offered for sale.

Even under the trial court's interpretation the coat was not on exhibition. At the time the loss occurred the coat was not in condition to be offered for sale nor was it exposed to public view. Actually the fur sale plaintiff had scheduled for Mrs. Pocker's premises had not begun so that the theft could not have occurred while the coat was being offered for sale.

Although the trial court dismissed the first cause of action the factual issues involved were considered by the jury under the second cause of action and resolved in favor of plaintiff. The only factual issues under the first cause of action were the value of the coat and whether a loss had in fact been sustained by the plaintiff. These issues were submitted to the jury under the second cause of action in addition to the issues relating to forcible entry. Had the court also submitted the first cause of action to the jury its charge would have been substantially the same. Therefore, there would appear to be no need to resubmit the factual issues under the first cause of action to another jury especially since the jury was questioned as to their findings on the two factual issues which were involved in the first cause of action and reported that they had found in favor of plaintiff on each issue. Indeed, by submitting the second cause of action to the jury instead of the first, the trial court imposed a greater burden on plaintiff than it was required to carry. Having successfully borne the greater burden, plaintiff should not now be asked to re-establish its right to a recovery by a second trial of the action.

The determination of the Appellate Term should, therefore, be reversed, the judgment of the City Court vacated and judgment directed to be entered in favor of plaintiff for $1,550, the amount found by the jury to be the loss sustained by plaintiff, with costs.

BREITEL, J. P., and BOTEIN, J., concur; BASTOW and RABIN, JJ., concur in result.

Determination unanimously reversed, the judgment of the City Court vacated and judgment is directed to be entered in favor of the plaintiff for $1,550, the amount found by the jury to be the loss sustained by plaintiff, with costs. [See 1 A D 2d 774.]