In the Matter of MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Petitioner, *v.* THOMAS THACHER, as Superintendent of Insurance of the State of New York, Respondent.

In the Matter of MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Petitioner, *v.* THOMAS THACHER, as Superintendent of Insurance of the State of New York, Respondent.

First Department, December 19, 1961.

*Rowland H. Long* of counsel (*Edward T. Post* with him on the brief; *Tanner, Friend, Kinnan & Post,* attorneys), for Massachusetts Mutual Life Insurance Company, petitioner.

*James D. Ewing* of counsel (*Arthur O. Kaiser* and *Eugene Z. Du Bose* with him on the brief; *Alexander & Green,* attorneys), for the Mutual Life Insurance Company of New York, petitioner.

*Samuel A. Hirshowitz* of counsel (*Philip Weinberg* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

STEVENS, J. These are companion proceedings, separately brought, under article 78, to review and annul determinations of the Superintendent of Insurance (herein called respondent) dated December 28, 1960, in which he withdrew his approval of option forms submitted by each petitioner.

The questions involve the power of respondent, under the statute, the nature of such power and, if that power be discretionary, whether in these proceedings such power has been abused.

On or about January 19, 1959, respondent approved an Additional Benefit Rider, known as a guaranteed insurability option (or Insurability Protection Agreement), which was attached to and offered as part of the petitioners' public policies of life insurance. Under such rider the insured is given the option at specific future age dates, limited to age 40 to purchase new insurance without furnishing evidence of insurability, on the same terms then available to others of that age group (non-possessors of the option) who are required to furnish evidence of insurability.

By letter dated July 23, 1959, respondent gave notice to all companies having on file approved guaranteed insurability option forms, that as the Insurance Department construed section 155 of the Insurance Law, such forms should restrict the operation of the incontestable and suicide clauses in such policies so that the respective periods in such clauses should run only from the date of issue of the original policy. No question of the limitation of the incontestability clause is involved here, but only the ruling dealing with the elimination of the suicide clause. While there are minor differences in the form and content of the petitioners' riders, and in the substituted option form of petitioner Mutual Life, the basic question involved is the same.

Pursuant to section 141 of the Insurance Law, a hearing was requested, granted, and the hearings held in January, 1960.

On or about December 28, 1960, respondent issued his decision and order, effective 90 days thereafter, withdrawing approval of the respective option forms because such forms did not restrict the applicability of the suicide clause to the date of issue of the original policy, but, instead, made such provision operative from the date of issuance of the opted policy. Respondent held this to be contrary to the provisions of section 155 (subd. 2, par. [d]) of the Insurance Law, prejudicial to the interests of the policyholder and to be unfair, unjust and inequitable.

Petitioners label the policies issued as "new" policies within the meaning of the statute and urge that respondent has no power to withdraw approval of "new" policies of insurance, issued pursuant to a policy rider form which contains a limitation expressly authorized by law. Petitioners deny that the rider is prejudicial or misleading.

Preliminary to any resolution of the issue involved is an ascertainment and examination of the powers, and the nature of the powers, of respondent, as contained in the statute.

Section 141 of the Insurance Law, "Withdrawal of approval of policy forms" provides: "Whenever by the provisions of this chapter the superintendent is authorized to give his approval of any form of insurance policy * * * he may, after notice and hearing given to the insurer which submitted such form for approval, withdraw an approval previously given, if the use of such form is contrary to the legal requirements applicable to such form at the time of such withdrawal * * * or in the case of any such policy or certificate form pertaining to life insurance, or any application, rider or endorsement to be used in connection therewith, *if in his judgment* the use of such form would be prejudicial to the interests of its policy-

holders or members, or it contains provisions which are unjust, unfair or inequitable." (Emphasis added.) The withdrawal is effective 90 days after the giving of notice, and such action is subject to judicial review.

There is no issue as to procedural requirements in the section quoted, so we look to the nature of the power given respondent. The use of the words " may " and " in his judgment " indicates that the power of withdrawal of approval is discretionary, is not unlimited, and is to be exercised only under certain circumstances, i.e., if the form be contrary to applicable legal requirements, if the use of such form would be prejudicial to the interests of the policyholders, or if the Superintendent determines the provisions to be unfair, unjust or inequitable. (See, also, Insurance Law, § 154, re: powers of Superintendent.)

Section 155 (subd. 2, par. [d]) of the Insurance Law, states:

" 2. No policy of life insurance delivered or issued for delivery in this state shall contain any provision which excludes or restricts liability in the event of death caused in a certain specified manner, except the following provisions, or provisions which in the opinion of the superintendent are substantially the same or more favorable to the policyholders.

" Provisions excluding or restricting coverage in the event of death:

\* \* \*

" (d) As a result of suicide within two years from the date of issue of the policy."

The section quoted limits the applicability and effect of the suicide clause to a period of two years. The use of the terms " delivered " and " issued " in the context used, indicates that such limitation is applicable to " new " policies. This term, in my view, may here be equated with " original " policies. Black, in defining the term " new " says, in part, " this word may denote novelty, or the condition of being previously unknown or of recent or fresh origin, but ordinarily it is a purely relative term and is employed in contrasting the date, origin, or character of one thing with the corresponding attributes of another thing of the same kind or class." (Black's Law Dictionary [4th ed.], p. 1193.) It may reasonably be construed to mean something appearing for the first time, and having an independent (again a relative term) existence.

If we examine the " rider " and the option contained therein certain things are noted immediately. The option has no existence separate from and independent of the policy. The right expressed therein depends for its survival upon the payment

of an added premium as provided for by the terms of the original or basic policy. Thus the option merely amounts to an extended privilege. This privilege, in duration as to the time when it may be exercised, is limited by the terms of the basic policy to age 40. In the absence of statutory provisions, a rider attached to the face of the policy or referred to therein is a part of the insurance contract (*Davern* v. *American Mut. Liab. Ins. Co.*, 241 N. Y. 318; *Hukle* v. *Great Amer. Ins. Co.*, 230 App. Div. 477 [liability insurance policies]; *Berkshire Life Ins. Co.* v. *Weinig*, 290 N. Y. 6 [life insurance]). (*Cf. Weisglass* v. *Northwestern Mut. Life Ins. Co.*, 31 Misc 2d 232; 44 C. J. S., Insurance, § 300.) "Every policy of life * * * insurance shall contain the entire contract between the parties". (Insurance Law, § 142, subd. 1.)

The fact that additional or further benefits may accrue upon an election by the insured to pay the required premium and exercise the option will not make the issued policy a new policy so as to permit the tacking on of a separate two-year suicide limitation. The added premium paid for the existence of the option right, and the premium paid upon the exercise of the option are all a part of the total consideration for the extended benefit. To permit the added defense of invalidity by reason of suicide within a further two-year period would not be in harmony with section 155 (subd. 2, par. [d]) of the Insurance Law (cf. *Matter of Metropolitan Life Ins. Co.* v. *Conway*, 252 N. Y. 449), or in harmony with the spirit of that law. In the *Metropolitan* case (*supra*) the court said that the incontestable clause in question did not mandate the risks the insurer had to agree to insure against but merely afforded a defense against invalidity. The suicide exclusion provision with which we are concerned here was enacted later by the Legislature and was explicitly limited in duration to a two-year period. (See, also, *Franklin* v. *John Hancock Mut. Life Ins. Co.*, 298 N. Y. 81.)

Nor is *Gans* v. *Ætna Life Ins. Co.* (214 N. Y. 326) to the contrary. In that case the old policy, a five-year term policy, was surrendered and all obligations thereunder extinguished when the new life policy, applied for pursuant to the option provision of the old policy, was issued. As the court pointed out (p. 331): "[i]t [the new policy]expresses no dependence on or connection with the term policy." Such policy "is in form and substance an independent, complete and isolated contract." By reason of the exchange of policies, the language and the intent of the parties as expressed in the new policy, and the fact that there was no prohibition by statute or by contract to the inclu-

sion of the one-year provision regarding suicide, the insurer prevailed. In the case before us the option continues to exist only so long as the old policy is held, and then only up to age 40.

As has been pointed out, respondent has discretionary power to withdraw previously given approval under certain conditions. Respondent, as Superintendent, is "charged and invested with the rights, powers and duties as expressed *or reasonably implied* by this chapter [Insurance Law], in connection with the business of insurance in this state." (Insurance Law, § 10.) (Emphasis added.) (See, also, Insurance Law, § 21.)

" The corporations organized under the laws of this state for life insurance are absolutely under the direction and control of the legislature." " [I]t is competent for the legislature, in the interest of the people and to promote the general welfare, to regulate insurance companies and the management of their affairs, and to provide by law for that protection of policy holders which they could not secure for themselves." (*People* v. *Formosa,* 131 N. Y. 478, 483.) When a foreign corporation " comes into this state by comity to do its business here through its agents, it must obey our laws and conform to our public policy " (p. 484). The primary purpose of the Insurance Law is the protection of the policyholder and the public. " The organization of an insurance company and the conduct of the business of writing insurance is not a right; it is a privilege granted by the State subject to the conditions imposed by the State and to its control and supervision." (*Matter of People* [*Int. Workers Order*], 199 Misc. 941, 967, affd, 280 App. Div. 517, affd. 305 N. Y. 258 [a proceeding to dissolve the corporate existence of a fraternal benefit society], cert. denied 346 U. S. 857.)

Bearing in mind the principles above referred to, we note that respondent, after a full hearing, determined that in his judgment the options as presently drawn contain provisions which are unjust, unfair, inequitable, likely to mislead the public, and their use is prejudicial to the interests of the policyholders. Such a determination in light of the purpose and intent of the statute, and the powers vested in respondent by the Legislature, should not be disregarded unless the record clearly reveals there is no substantial basis to support the conclusion reached. There is some precedent for the action of respondent in withdrawing approval, as indicated by the department's Exhibit 4, a circular letter of the then Superintendent of Insurance, Louis H. Pink, dated March 27, 1939. The options provide that the insured at certain future times may pur-

chase policies of insurance (characterized by petitioners as "new") up to a stated amount without furnishing evidence of insurability, upon stated terms.

Evidence of insurability embraces more than merely good health or good physical condition; it may involve the mental attitude, possible suicidal tendencies, financial circumstances, probable life expectancy when an act by a sovereign power may reasonably be expected to terminate the life span by execution, and other factors. (See *Kallman* v. *Equitable Life Assur. Soc. of U. S.*, 248 App. Div. 146, affd. 272 N. Y. 648.)

When the insurer waives the requirement for evidence of insurability, the applicant policyholder is entitled to believe, and reasonably so, that upon payment of the stated premium, he will receive full benefits without again facing a two-year suicide exclusion clause. Such a provision is likely to mislead and is less favorable to the insured and within the prohibition of section 155 (subd. 2, par. [d]) of the Insurance Law. Respondent found that attachment of such a condition would deprive the policyholder of "part of what he purchased and, to this extent, would make illusory one of the benefits offered." "The language employed in the contract of insurance must be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it." (*Morgan* v. *Greater N. Y. Taxpayers Mut. Ins. Assn.*, 305 N. Y. 243, 248; *Levinson Furs* v. *Centennial Ins. Co.*, 286 App. Div. 788, motion for reargument or leave to appeal denied 1 A D 2d 774.) Moreover, such a provision waiving evidence of insurability may be contrary to public policy because it could well serve as an inducement to build up an insurance reserve in contemplation of suicide. (Cf. *Smith* v. *National Benefit Soc.*, 123 N. Y. 85.)

The consideration for the option is stated therein to be the application for the policy, the agreement, and payment of the premium for the agreement. Obviously, the option has no vitality independent of the basic agreement, and the rider containing the option is a part of the policy. (See *Hopkins* v. *Connecticut Gen. Life Ins. Co.*, 225 N. Y. 76; cf. *Dannhauser* v *Wallenstein*, 169 N. Y. 199.) It has been stated that whatever is within the spirit of the statute is within the statute. (Cf. *Standard Acc. Ins. Co.* v. *Newman*, 2 Misc 2d 348, affd. 268 App. Div. 967.) The design and purpose of the Insurance Law being for the protection of the policyholder, a construction which would permit the insurer additional two-year suicide exclusion periods upon the exercise of option purchases, the exist-

ence of which is dependent upon a single original policy, is contrary to the spirit of the statute as well as in contravention of its plain language. Petitioner has not sustained the burden of proving the act of withdrawal of approval without the powers of respondent, that his action does not rest upon a reasonable basis, nor that there was any abuse by respondent of his discretionary powers. The use of the term "new" as applied to the policy issued when the option is exercised is not controlling. Respondent may look to the contract itself to determine its nature.

The order appealed from should be confirmed, without costs.

RABIN, J. (dissenting). I dissent and would annul the orders of the Superintendent of Insurance.

As I see it, the principal question to be resolved in these proceedings is whether the policies issued upon the exercise of the option are new, independent and separable contracts of insurance as is contended by the petitioners or whether they are merely part of "one package, one transaction and one contract" as is contended by the Superintendent. If they be "new" policies then I am of the firm opinion that subdivision 2 of section 155 of the Insurance Law precludes the action taken by the Superintendent. If, however, these policies are not "new" but if they, together with the original policy, are one contract, then the Superintendent must be sustained in his determination that the suicide exclusion clause be omitted from the option rider.

While there can be no dispute as to the fact that the original option rider by its express terms denominates the prospective policies as "new", it is recognized that such characterization does not of necessity make them so in legal contemplation. Nor, by the same token, does the fact that the prospective policies are born of the option rider in the original contract make them part and parcel of such contract. To the contrary I believe that once the option has been exercised the policy issued in consequence thereof becomes an entity separate and independent of the option rider and the policy in which it was contained. This conclusion reached as to the nature of these policies vis-a-vis each other is supported by an examination of their characteristic provisions. It is uncontroverted that the original and subsequent policies could differ as to plan, method and amount of premium payment, designated beneficiaries and the revocability rights with respect thereto, method of payment of the policy proceeds, and in many other respects. In addition, and

what I deem to be of primary significance, the termination of the original contract would have no effect upon other policies which had already been issued pursuant to the option. Such policies would continue in force according to their own terms and conditions irrespective of the fact that the original policy and its option rider no longer had any vitality. The contra is likewise true. If there were to be a termination of the subsequent policies or any of them, such termination would in no way affect the existence of the original policy. It appears therefore that all the indicia point unmistakably to the fact that these policies are independent, separable and "new". In *Gans* v. *Ætna Life Ins. Co.* (214 N. Y. 326) the Court of Appeals reached a like conclusion in determining that two policies — albeit one was spawned of the other — were independent contractual entities. The court pointed out the factors which motivated its conclusion when it said (p. 331) : " It [the second policy] expresses no dependence on or connection with the term [original] policy. Nor was it a restatement of the contents of the term policy. The premium to be paid, and the rights, privileges, advantages and obligations of both parties under it are essentially and substantially different from those under the term policy."

Having concluded that the subsequent policies are "new" it must follow that subdivision 2 of section 155 grants to the petitioners the right to insert suicide exclusion clauses. While the Superintendent concededly has broad discretionary powers under section 141 — and I do not dispute his right in a proper case to withdraw a consent earlier given — such powers are not so broad as to permit such withdrawal merely because the insurance companies seek to exercise a right expressly conferred by statute.

It might well be that the Superintendent, within his broad discretionary powers, could refuse to permit the inclusion of any type of a guaranteed insurability option in any policies — there being no express statutory sanction for such option. And, such action could be taken in the discretion of the Superintendent for any of a number of reasons. He could determine for example that such option privilege would adversely affect the carriers from a financial standpoint or that such option rider, *in toto,* was unfair to policyholders. But, the Superintendent, having determined the option arrangement to be a desirable one and having permitted the inclusion of the option rider in the policy, may not now excise therefrom the suicide exclusion sanctioned by statute, which is all that the Superintendent seeks to have accomplished. The Superintendent's area

of discretionary action must perforce end at the outermost boundary of the legislatively declared policy which approves of a suicide exclusion clause in life insurance policies.

Nor may the action of the Superintendent be sustained upon the theory that the policyholders are misled or otherwise confused. At the outset, he concedes that the Massachusetts Mutual policy expressly informs the policyholders that the policies to be issued will contain a suicide exclusion clause. In fact, in one of his decisions and orders he states: " It can be said that by clearly setting forth such language in its riders, respondent [Massachusetts Mutual] has obviated the contention that the policyholders may be misled." Secondly, he could properly direct that such language be used in the option rider as will clearly and unmistakably inform policyholders that the policy to be issued will contain such clause. The Superintendent admits that the possibility that the policyholders might be misled is not the basis on which he rests his withdrawal.

Nor may the action of the Superintendent be sustained on the ground that the rider contemplates the issuance of a contract that is unfair to the policyholders. The Legislature has declared public policy to be to the contrary. As heretofore pointed out the Superintendent must either allow the policy rider or disallow it in the exercise of his broad discretionary powers, but not upon the sole ground that the proposed policies will contain suicide exclusion clauses. His disapproval of such clauses may not be converted into a finding of unfairness or prejudice to the policyholders. That he has so done is apparent from the position taken by him.

It might be well to add that I believe there is no merit to the argument that if a new suicide exclusion clause is permitted the policyholder is not getting the " guaranteed insurability " for which he paid. While it is true that suicidal tendencies are a factor considered by insurers in determining insurability, such tendencies may not be considered as a ground for refusing to issue a policy contemplated by the rider. For to do so would be in derogation of the guarantee of insurability. In other words, even were the insurers to conclude that the policyholder had suicidal tendencies they could not—nor is it contended that they could—refuse to issue a new policy under the option. The petitioners agree that they must in such case issue a policy for that is what they agreed to do in the original contract. But such inability to refuse to insure does not carry with it a release of the insurer's right to include a suicide exclusion clause as contemplated by statute.

Accordingly, I believe the orders of the Superintendent were improperly made and should be annulled.

VALENTE and BASTOW, JJ., concur with STEVENS, J.; RABIN, J., dissents in opinion in which BOTEIN, P. J., concurs.

Determinations confirmed and the petitions dismissed, without costs.