**EVVTEX CO., INC., Plaintiff–Appellee,**

**v.**

**HARTLEY COOPER ASSOCIATES LIMITED and Gibbs Hartley Cooper Limited, Defendants–Appellants,**

**Underwriters of Lloyd's at London, subscribing to Lloyd's Jewelers' Block Policy No. ZJB9012467–351, Defendant.**

**No. 200, Docket 96–7244.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1996.

Decided Dec. 31, 1996.

---

Norman Landres, New York City (Alan J. Martin, Abrams & Martin, P.C., New York City, of counsel), for Defendants–Appellants.

Lawrence B. Newman, New York City, for Plaintiff–Appellee.

Before: MINER, PARKER, Circuit Judges, and RESTANI, U.S. Court of International Trade Judge.*

* Hon. Jane A. Restani of the United States Court of International Trade, sitting by designation.

1. Gibbs Hartley Cooper Limited is a United Kingdom corporation with its principal place of business in London. Hartley Cooper Associates

RESTANI, Judge:

Plaintiff-appellee Evvtex Co., Inc. ("Evvtex") initiated this action against defendants-appellants Hartley Cooper Associates Limited and Gibbs Hartley Cooper Limited (collectively "Hartley Cooper")[1] to recover money collected by Hartley Cooper in its capacity as an insurance broker and paid over to a third party, John A. Finch Associates, Ltd. ("Finch"). The money collected included settlement proceeds, minus $27,000 in alleged unpaid premiums and a discount service fee of 1½% of the settlement proceeds. Following a bench trial, the district court granted judgment for plaintiff on the ground that Hartley Cooper breached its fiduciary duty. For the reasons set forth below, we affirm.

## BACKGROUND

Evvtex operates a wholesale diamond business and maintains offices in Dallas and New York. David Moussazadeh, a/k/a David Zadeh, maintains the New York office and supervises all insurance matters. Ebrahim Moussazadeh, a/k/a Abe Zadeh, maintains the Dallas office and deals mainly with sales.

In May 1991, Evvtex purchased through Finch a jeweler's block policy of insurance covering the theft of goods. Finch, who represented Evvtex as a licensed New York excess line insurance broker, placed the order for Evvtex's insurance policy through Hartley Cooper. Hartley Cooper subsequently placed the coverage with the Underwriters of Lloyd's at London ("Lloyd's").

In November 1991, Evvtex suffered a loss of goods by theft in excess of $735,204. On March 19, 1992, Evvtex submitted a sworn Proof of Loss Statement signed by David Moussazadeh, authorizing Hartley Cooper's collection of the settlement proceeds from Lloyd's. The Proof of Loss Statement directed payment of the claim only to Evvtex and Horizon Public Adjusters Group, Inc., Evvtex's insurance adjuster.

Limited is a subsidiary of Gibbs Hartley Cooper and is an approved insurance broker qualified to obtain insurance from Underwriters of Lloyd's at London.

The series of communications that followed between Hartley Cooper, Evvtex and Finch present the core of this case. The first communication from Finch to Hartley Cooper involved a letter written on March 25, 1992. (Faxed letter from Finch to Hartley Cooper of 3/25/92; J.A. at 349). The letter, written on Evvtex letterhead, authorized Hartley Cooper's discount service fee of 1½% of the settlement proceeds as compensation for Hartley Cooper's advance of its own funds to Evvtex prior to the actual receipt of the proceeds from Lloyd's. The district court found the legitimacy of this letter to be questionable as: the typeface is different from all other Evvtex letters, the text is skewed and appears taped onto the letterhead, and the letter is signed "David Zadeh," whereas the Proof of Loss Statement, the premium check, and all other Evvtex documents were signed "David Moussazadeh." *Evvtex Co. v. Hartley Cooper Assocs. Ltd.,* 911 F.Supp. 732, 736 (S.D.N.Y.1996). The district court found that Evvtex did not authorize the March 25 letter, nor did it authorize the 1½% service fee for the advancement of the settlement funds. Finch created and forged the letter.

On March 31, 1992, Geoffrey Berrill, who was filling in for John Evans, the director of Hartley Cooper most familiar with transactions between Finch and Evvtex, received a handwritten faxed letter from Finch. The letter noted that Evvtex desired the prompt receipt of the settlement funds and that in exchange for Hartley Cooper's advancement of its own funds, Evvtex agreed to the 1½% discount service fee.

Berrill responded with a letter to Finch on April 2, 1992. The letter stated that Hartley Cooper would advance the settlement proceeds to Evvtex less the deduction for the 1½ % discount service fee and outstanding premiums.[2] In addition, the letter articulated two specific requests. First, Hartley Cooper requested "written confirmation from [Evvtex] that [Hartley Cooper] can deduct the outstanding premiums U.S. $27.000 gross,

being 3 instalments." (Letter from Hartley Cooper to Finch of 4/2/92; J.A. at 343) [hereinafter "Hartley Cooper's April 2 letter"]. Second, Hartley Cooper requested the bank account number of Maxson Young, an insurance adjuster. Berrill did not request the information directly from Evvtex, as neither Abe nor David Moussazadeh saw Hartley Cooper's April 2 letter. Nor did Berrill inquire as to the legitimacy of the March 25 letter.

On April 2, 1992, Finch faxed a sample letter to Abe Moussazadeh,[3] requesting that the sample letter be typed on Evvtex letterhead. The sample letter stated, "Please telex funds to account number: 310264022. This is in accordance with Hartley Cooper Associates [sic] letter 2 April 1992." (Faxed letter from Finch to Evvtex of 4/2/92; J.A. at 351). Abe Moussazadeh complied with Finch's request by signing the following letter:

> As per conversation with John Finch Associates amd [sic] in reference to my claim, please telex funds to Republic National Bank, 452 Fifth Avenue, New York, New York 10018, for the account of John Finch Associates, premium account, account number: 310264030[.]
>
> The final settlement between John Finach [sic] and Associates and Evvtex Company will take place immediately after confirmation of receipt.
>
> This [is] in accordance with Hartley Cooper Associates [sic] letter 2 April 1992.

(Letter from Evvtex to Hartley Cooper of 4/2/92; J.A. at 352) [hereinafter "Evvtex's April 2 letter"]. The district court noted three significant discrepancies between what was requested by Hartley Cooper and what was received that should have put Berrill on notice of the communication gap between the parties. *Evvtex Co.,* 911 F.Supp. at 737, 742. First, telexing the funds to Finch directly contradicted the directions in the Proof of Loss Statement. *Id.* at 742. Second, although explicitly requested in Hartley Coo-

---

**2.** There should have been no outstanding premiums, since on October 9, 1991, Evvtex had timely paid Finch the premium due under the policy. *See Evvtex Co.,* 911 F.Supp. at 735.

**3.** Abe Moussazadeh assisted with the management of the New York office while David Moussazadeh was out of town.

per's April 2 letter, Evvtex's April 2 letter did not authorize a deduction of the outstanding premiums or the discount service fee. *Id.* at 737. Third, Evvtex provided the account number for Finch's premium account, rather than the requested bank account number for Maxson Young. *Id.*

On April 3, 1992, Berrill advanced $697,176.62 in settlement funds to Finch's account, which was the amount of loss less the deduction of $27,000 for unpaid premiums and $11,028.08 for the discount service fee. On April 10, 1992, Hartley Cooper received the settlement proceeds from Lloyd's as arranged.[4] In June 1992, Evvtex notified Hartley Cooper that it had not received the settlement funds from Finch. Finch was subsequently found guilty of grand larceny in the second degree.

While Hartley Cooper had not received prior complaints of Finch withholding settlement funds, Hartley Cooper was aware of Finch's general financial instability. Since 1987, Hartley Cooper had granted Finch extensions for the collection of premiums and by 1991, Finch owed Hartley Cooper between $2.2 million and $2.3 million. By March 1992, Finch had reduced this debt to $900,000. In April 1992, however, Hartley Cooper hired a management consulting firm, Albis Associates, Ltd. ("Albis"), to investigate Finch's cash flow problems. Albis produced two reports, the first a mere five days after Hartley Cooper transferred the settlement funds to Finch. Both reports concluded that Finch's problems were primarily in premium

collection. Hartley Cooper did not disclose to Evvtex its growing concern regarding Finch's outstanding debt or Albis' investigation until after the funds were transferred.[5]

Evvtex filed an amended complaint in March 1994 against Hartley Cooper and Lloyd's. In March 1995, the district court dismissed Lloyd's from the action on a motion for summary judgment. *See Evvtex Co.,* 911 F.Supp. at 735. Following a bench trial, the district court issued an order on January 17, 1996, granting plaintiff's claim against Hartley Cooper and awarding damages. *Id.* at 734. On March 1, 1996, Hartley Cooper filed this appeal.

### STANDARD OF REVIEW

The district court's findings of fact shall not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *See Travellers Int'l A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1574 (2d Cir.1994). Conclusions of law are subject to *de novo* review. *Travellers Int'l, A.G.,* 41 F.3d at 1574.

### DISCUSSION

Hartley Cooper alleges that the district court erred by: (1) misstating the standards applied to a fiduciary and applying New York insurance law, (2) holding Hartley Cooper liable for Finch's fraudulent representations, and (3) failing to address proximate cause.

### I.

Both New York insurance law[6] and common law provide that insurance brokers

---

4. Evvtex was unaware that the settlement funds would be received from Lloyd's within days of Hartley Cooper's advance.

5. Hartley Cooper notes that David Moussazadeh testified that he had knowledge of Finch's premium collection problem as early as December 1991. The testimony, however, suggests that David Moussazadeh knew only that other clients had not paid premiums, not that Finch could not collect the premiums. Moreover, Hartley Cooper notes that David Moussazadeh met John Hammond of Albis in the spring of 1992, before signing the Proof of Loss Statement. Hammond informed David Moussazadeh that he worked for an independent accounting firm hired by Hartley Cooper because "there were discrepancies" between Hartley Cooper's and Finch's books.

6. Hartley Cooper alleges that the district court erred in subjecting it to New York insurance law

as an unlicensed, non-resident broker doing business only in the United Kingdom. This argument is unpersuasive for two reasons. First, the district court found that New York law applied because of Hartley Cooper's significant contacts with this jurisdiction and because neither party disputed the choice of law. *Evvtex Co.,* 911 F.Supp. at 738. Second, "[w]hen a foreign corporation 'comes into this state by comity, to do its business here through its agents, it must obey our laws and conform to our public policy.'" *Massachusetts Mut. Life Ins. Co. v. Thacher,* 15 A.D.2d 242, 222 N.Y.S.2d 339, 344 (1st Dep't 1961) (quoting *People v. Formosa,* 131 N.Y. 478, 30 N.E. 492, 494 (1892)). As Hartley Cooper did business through its agents in New York, its status as a foreign corporation does not negate its fiduciary duty to Evvtex. Thus, the district court did not err in applying the New York insurance law to Hartley Cooper.

act as agents on behalf of the insured where they are "employed by the insured to procure insurance." 68 N.Y.Jur.2d *Insurance* § 367 (1988); *see* N.Y.Ins.Law § 2101(c) (McKinney 1985 & Supp.1996); *Bohlinger v. Zanger*, 306 N.Y. 228, 117 N.E.2d 338, 340 (1954). An agent enters into a fiduciary relationship with a principal requiring that an agent exercise reasonable diligence. *Brown v. Poritzky*, 30 N.Y.2d 289, 332 N.Y.S.2d 872, 283 N.E.2d 751, 754 (1972), *overruled on other grounds, Lusenskas v. Axelrod*, 81 N.Y.2d 300, 598 N.Y.S.2d 166, 614 N.E.2d 729 (1993). Within the exercise of reasonable skill, care and diligence, an agent has a duty to disclose information.[7] *Cristallina S.A. v. Christie, Manson & Woods Int'l Inc.*, 117 A.D.2d 284, 502 N.Y.S.2d 165, 171 (1st Dep't 1986); Restatement (Second) of Agency § 381 (1957). Specifically, an agent is

> subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person.

Restatement (Second) of Agency § 381. This duty exists if the agent has notice of facts which, in view of its relations with the principal, the agent "should know may affect the desires of his principal as to his own conduct or the conduct of the principal or of another agent." *Id.* cmt. a.

■ Hartley Cooper as an insurance broker is an agent of the insured, Evvtex. The district court did not err in finding that in this capacity, Hartley Cooper acquired information that would likely have affected Evvtex's conduct. Specifically, Hartley Cooper was aware of Finch's general financial instability. The instability manifested itself in 1987 primarily as a premium collection problem. By 1991, Finch owed Hartley Cooper between 2.2 and 2.3 million dollars. Finch's reduction of his debt to $900,000 by March 1992 did not alleviate Hartley Cooper's growing concerns. Hartley Cooper addressed these concerns in April 1992 by hiring Albis, a management consulting firm, to investigate Finch's premium collection practices. Although Hartley Cooper had not received any complaints regarding claim proceeds and had not instigated the Albis investigation for that purpose, hiring Albis demonstrated Hartley Cooper's increased concern regarding Finch's ability to serve as an excess line broker. Hartley Cooper, however, failed to consider the potential effects on its clients of Finch's instability.

The district court also found that Hartley Cooper's knowledge of Finch's financial instability combined with two other factors supported a duty to disclose the information. First, the March 25 letter put Hartley Cooper on notice of a potentially invalid authorization for advancing the settlement proceeds and deducting the discount service fee. Second, Evvtex's April 2 letter put Hartley Cooper on notice of a potential communication gap between all three parties based on the clear discrepancies in the information requested and the information received. The letter did not respond to Hartley Cooper's

---

7. Hartley Cooper contends that a fiduciary is only obligated to comply with the clear instructions of the insured and is not obligated to investigate those instructions. *See Mets Donuts, Inc. v. Dairyland Ins. Co.*, 166 A.D.2d 508, 560 N.Y.S.2d 790, 791 (2d Dep't 1990) (absent a showing that the insured is aware of discrepancies, insured may rely upon agent's presumed obedience to instructions); *Israelson v. Williams*, 166 A.D. 25, 151 N.Y.S. 679, 681 (2d Dep't 1915). The district court rejected this argument, noting that unlike the agents in *Israelson* and *Mets Donuts*, Hartley Cooper had superior knowledge. *Evvtex Co.*, 911 F.Supp. at 742.

We find Hartley Cooper's argument unpersuasive for two reasons. First, the broker's obligation to follow the clear instructions of the insured is not the exclusive obligation of a fiduciary. A fiduciary's duty to use reasonable care, skill and diligence is an overarching obligation that contains many components. While an agent may follow the instructions of the insured without investigation, it must also disclose relevant information. Second, even if Hartley Cooper were only obligated to follow instructions, Evvtex's instructions were not clear and explicit. *See* 68 N.Y.Jur.2d *Insurance* § 439 (1988) ("insured's agent must follow strictly instructions which are clear, explicit, absolute, and unqualified"). As discussed later, Evvtex's April 2 letter did not respond directly to Hartley Cooper's requested information and contradicted the terms of the Proof of Loss Statement. Thus, the instructions given were not clear and explicit, but instead required further investigation.

direct request for written authorization to deduct the premiums and discount service fee, nor did it provide Maxson Young's account number. Instead, Evvtex's letter authorized transferring the funds to Finch's account in direct contradiction to the Proof of Loss Statement. These discrepancies, however, were not apparent to Evvtex as neither Abe nor David Moussazadeh actually had Hartley Cooper's April 2 letter in his possession. Considering Finch's instability and the apparent lack of communication between the parties, the district court did not err in finding that Hartley Cooper's knowledge was relevant to the affairs entrusted to it as Evvtex's agent.

Furthermore, the district court did not err in finding that Evvtex did not have access to the same information as Hartley Cooper. First, Hartley Cooper did not inform Evvtex directly, nor did Evvtex authorize, that the settlement funds would be advanced and that Evvtex would be charged the discount service fee. Moreover, Finch faxed the March 25 letter directly to Hartley Cooper, ensuring Evvtex's lack of knowledge of the transaction and the forgery. Second, Evvtex had no actual knowledge of Hartley Cooper's April 2 letter requesting the specific information and thus was unaware of Finch's changes in the sample response letter. Third, while Evvtex was aware that Hartley Cooper had hired Albis, Evvtex was not aware of the extent of Finch's financial problems or of the potential effect on its own affairs, and thus its knowledge was inferior to Hartley Cooper's.

In addition, Hartley Cooper had notice that Evvtex likely would desire this information. The duty to disclose information includes situations where the agent should have known this information would affect the desires and conduct of the principal. *See* Restatement (Second) of Agency § 381 cmt. a. Here, Hartley Cooper's knowledge affected its own conduct. Hartley Cooper hired Albis to alleviate its own concerns of collecting the money Finch owed to it. As Finch was entrusted with $697,176 [8] of Evvtex's money, Hartley Cooper should have known

that Evvtex reasonably would share the same concerns regarding the collection of funds from Finch. Thus, the district court did not err in finding that Hartley Cooper breached its fiduciary duty to Evvtex.

## II.

Hartley Cooper attempts to shift the liability to Evvtex by alleging that the district court erred in not binding Evvtex to Finch's fraudulent representations made to Hartley Cooper. *See American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 566, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330 (1982) ("[A] principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority."); *Citibank, N.A. v. Nyland (CF8) Ltd.,* 878 F.2d 620, 624 (2d Cir.1989). Unlike the unrelated third parties harmed in *American Society* and *Citibank,* however, here the third party (Hartley Cooper) is a fiduciary of the principal. *See American Soc'y,* 456 U.S. at 559–61, 102 S.Ct. at 1938–40; *Citibank,* 878 F.2d at 621–22. Thus, the cases focusing on the relationship between principals and independent third parties do not apply.

Moreover, in both cases the principal is bound only because the third party is unaware of the irregular conduct. *See American Soc'y,* 456 U.S. at 566, 102 S.Ct. at 1942–43; *Citibank,* 878 F.2d at 624. As stated in *American Society,*

> [l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.

456 U.S. at 566, 102 S.Ct. at 1942 (quoting Restatement (Second) of Agency § 261 cmt. a) (alteration in *American Soc'y*). Here, while Hartley Cooper did not know of any specific theft, it should have recognized that Finch likely was not acting in the ordinary course of business and that the transactions involving the settlement proceeds, premiums, and discount service fee were irregular.

---

8. Hartley Cooper deducted from Evvtex's settlement proceeds of $735,204, the sum of $27,000 in unpaid premiums and $11,028.08 for the discount service fee and transmitted the balance to Finch's bank account. Thus, Finch received $697,176.62 of Evvtex's money.

## III.

 Hartley Cooper further contends that the district court committed reversible error by not expressly finding that Hartley Cooper's breach of its fiduciary duty proximately caused Evvtex's injury. The Second Circuit does not require an express finding of proximate cause in fiduciary duty cases. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 996 (2d Cir.1983) ("[h]aving found ... a breach of fiduciary duty, the district judge was not required to find a 'but for' relationship"). Although the broadest reading of the *ABKCO Music* holding would likely be limited to the unique facts of that case,[9] here the district court also did not commit reversible error.

As in *ABKCO Music,* here the district court made an implicit finding of causation. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 508 F.Supp. 798, 803 (S.D.N.Y.1981) (although it was unclear whether the agent's conduct was the "but for" cause of the injury, district court impliedly found causation by noting that breach made the former client's success less likely). Here, the district court was even more direct in indicating that but for the chain of events constituting Hartley Cooper's breach, Evvtex would not have been injured. *See Evvtex Co.*, 911 F.Supp. at 742. The district court found that the chain of events began "[a]s a consequence" of Finch's forged letter of March 25, followed by both Hartley Cooper's and Evvtex's April 2 letters, the lack of disclosure regarding Finch or investigation by Hartley Cooper of the letters, and ultimately by Hartley Cooper's advance of the settlement funds to Finch. *Id.*

The district court's analysis indicates that but for Hartley Cooper's breach of its fiduciary duty, the chain of events would have been different. If Hartley Cooper had disclosed its knowledge regarding Finch or questioned Evvtex's responses, it is likely that Hartley Cooper on its own, or at the insistence of Evvtex, would have simply followed the terms of the Proof of Loss State-

ment directing payment of the funds only to Evvtex, and not to Finch. Thus, Evvtex would not have been injured, as it would have received directly all of settlement funds without the deductions of the premiums and the discount service fee. As the district court's finding of proximate cause was implicit, it did not commit reversible error.

The district court's judgment is affirmed.

---

**9.** In *ABKCO Music,* the agent revealed confidential information of his former client to a third party, which adversely affected settlement negotiations between the third party and the agent's

former client. 722 F.2d at 993. Thus, *ABKCO Music* involved a conflict of interest and breach of a fiduciary duty by use of confidential information.