David T. Gibbons, J.
This is a petition by Gabriel S. Kaye, as assignee for the benefit of creditors of Diesel Motors Co., Inc., assignor, for an order requiring Howard C. Hegeman Agency, Inc., a claimant herein, ‘1 to turn over and surrender possession to the assignee herein, the sum of $947.00 representing proceeds of premium refunds received by the said Howard C. Hegeman Agency, Inc.”
The said Howard C. Hegeman Agency, Inc., has served and filed its affidavit in opposition, claiming the right to set off such funds to diminish its claim, and elected to submit said controversy for the determination of this court. There are no issues of fact presented.
The respondent, Howard 0. Hegeman Agency, Inc., was the broker engaged by the assignor, Diesel Motors Co., Inc., to obtain its insurance.
It is established from the motion papers submitted herein, that as of December 31, 1971, the assignor was indebted to its said insurance broker in the sum of $163.34, for advances toward its insurance premium payments and that subsequent thereto the broker advanced further moneys to the insurer to pay the 1973 premiums on the assignee’s insurance policies, to bring the total amount to the sum of $2,216.34 owed by the assignor to its broker.
The assignor, Diesel Motors Co., Inc., executed an assignment for the benefit of creditors on February 25,1972. Following said assignment the insurance policies were canceled, and the broker filed a general claim herein for the sum of $2,216.34, representing the funds which it had advanced for the payment of assignor’s insurance premiums.
Subsequently, after the insurance was canceled, the broker received a return of unearned preimums from the insurer in the sum of $947 which it retains and now claims as a setoff against its claim of $2,216.34.
The assignee asserts that the return of unearned premiums is an asset of the estate and seeks this turn-over order. *304 A dual relationship existed between the assignor and the broker.
With respect to the cash advances made by the broker to pay the assignor’s insurance premiums, the relationship was that of debtor and creditor.
Insofar as he may have paid the insurer or otherwise serviced the policies, as for example making claims, increasing the liability, or giving notices to the insurer, it was acting in the capacity of an agent for the insured (Bohlinger v. Zanger, 306 N. Y. 228, 232).
Under section 125 of the Insurance Law, the broker acts in the capacity of fiduciary of the insured with respect to all funds received or collected from the insurer on the policy.
Notwithstanding the broker’s claim that the cash advances it made for the payment of the assignor’s insurance premiums were made without the delivery of a promissory note, without the expectation of interest or a service charge, and without a premium finance agreement, the ultimate relationship between the parties was that of debtor and creditor with respect to the money advanced to purchase insurance for the assignor.
It is irrefutable that when such insurance was in force the policies were the property of the assignor insured. The insurance contract was between the assignor and the insurer, and all the fruits of the insurance, should a loss occur, would inure to the assignor.
When the assignment for the benefit of creditors was executed by Diesel Motors 'Co., Inc., the subsisting relationship of debtor and creditor between it and the broker was reflected in a creditor’s claim filed by the broker in said proceeding for the full amount of the advances made to pay the assignor’s insurance premiums.
After the assignment, all of the assets of Diesel Motors Co., Inc. devolved to and became the property of the assignee. This not only included all personal property, stock in trade, or accounts receivable, but it also embraced all insurance policies then in force.
When this insurance was canceled after the assignment was executed, the right to the return of unearned premiums became an asset in the hands of the assignee.
The broker herein has established no property right in the money representing the unearned premiums by virtue of an assignment thereto or lien thereon executed by the insured prior to its assignment for the benefit of creditors. It does not present itself in this proceeding as a creditor possessed of such secured *305 position, and an inspection of1 its claim herein, which is attached to the moving papers, reveals that it has filed a general claim without asserting any secured right.
Absent such secured status, the broker holds the fund in issue as a fiduciary without the right of offset.
It was held in Matter of Crane Sheet Metal Works (265 F. Supp. 124 [1967]) that absent an actual transfer of a property right in the refund of unearned premiums, a power of attorney to receive all unearned and return premiums did not have the effect, and was wholly ineffective as an instrument of transfer of such moneys to the broker in a Federal bankruptcy proceeding. In the instant case there is no claim of prior transfer to the broker or execution of a power of attorney in favor of the broker.
Turning now to the question as to whether the broker may apply such funds to diminish his claim against the assignor by way of setoff, we must now consider the permissibility of such result in the light of the jurai relationship existing between the parties.
The first inquiry to be made relates to a determination of the capacity in which the broker was acting when he received the funds representing the unearned premiums after the policies were canceled.
Under such circumstances, the broker’s status is declared to be that of a fiduciary under the provisions of section 125 of the Insurance Law, which provides as follows: “Every insurance agent and every insurance broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or insurance broker”.
Offset is permissible where mutual debts and credits exist. Debts and credits to be mutual must be due from the same persons in the same capacity. They cannot be liabilities held in inconsistent relations. (Morris v. Windsor Trust Co., 213 N. Y. 27; Beecher v. Vogt Mfg. Co., 227 N. Y. 468; Matter of People [Consolidated Ind. Ins. Co.], 287 N. Y. 34 [1941]; Drake v. Pierce Butler Radiator Corp., 202 Misc. 935, 943.)
The mutual capacity concept is sometimes referred to as “ in the same right ”, or “ mutuality of debt ”, and in Corpus Juris ■Secundum (vol. 80, Set-off and Counterclaim, § 48, subd. a, par. [2], p. 74), the term is defined as follows: “As a general rule, in order to warrant a set-off the demands must be mutual and subsisting between" the same parties, and furthermore must be due in the same capacity or right, and there must be mutuality as to the quality of the right.”
*306 The funds representing the return of unearned premiums by the insurer, came into the hands of the Howard C. Hegeman Agency, Inc., the broker, for the purpose of remitting the same to the insured. Under such circumstances, it was holding such money in a fiduciary capacity as a conduit, to the insured, as mandated by section 125 of the Insurance Law.
Although its relationship with respect to the funds advanced by it to pay the insurance premiums of the assignor’s policies was that of debtor and creditor, its relationship with the assignor with respect to refunds received from the insurer for unearned premiums was that of a fiduciary charged with the trust obligation, under the said statute, of remitting the same to its principal.
A creditor may not set off against his claim his debtor’s assets, which may come into his hands in a fiduciary or agency relationship.
Subdivision 3 of section 153 of the Insurance Law provides, in part, as follows: “ Voluntary advancement of a premium to the insurer by an agent or broker, where no additional charge over and above the premium has been imposed upon the insured and the insured has not signed a note or other obligation to pay the premium shall not be construed to be within the meaning of insurance premium finance agreement as defined in article twelve-b of the banking law.”
The broker relies heavily upon the contention that because it did not obtain a promissory note from the insured, nor enter into a premium finance agreement with it, nor exact any service charge, it was engaged in the voluntary advancement of premiums and it may not be deemed to be in the premium finance business, and, therefore, not controlled by the provisions of article 12-B of the Banking Law, which, under section 576 (subd. 1, par. [f]) states with reference to the return of the unearned premiums, as follows: “ The insurer or insurers within a reasonable time not to exceed sixty days after the effective date of cancellation, shall return whatever gross unearned premiums are due under the insurance contract or contracts on a short rate basis to the premium finance agency for the benefit of the insured or insureds.” (Emphasis added).
Although it may be conceded that the broker herein is not a premium finance agency within the meaning of article 12-B of the Banking Law, it is significant to note that the Legislature of this State has, with respect to the control of such agencies, expressed its policy that unearned insurance premiums are received by them “ for the benefit of the insured ”.
*307 There is no merit to the contention advanced on behalf of the broker. As above demonstrated, the obligation of a broker (who had advanced funds to pay the insured’s insurance premiums) to return unearned premiums after cancellation is that of a fiduciary (Insurance Law, § 125) and, absent the actual transfer of a property right in the fund, such obligation is the same whether he is engaged in the business of an insurance premium finance agency (Banking Law, art. 12-B), or, as here, he makes voluntary advances as permitted by subdivision 3 of section 153 of the Insurance Law.
It may also be noted that, where the broker-insured relationship does not intervene, and the insurance purchase transaction is made directly between the insured and the insurer, a situation of such mutuality between debtor and creditor prevails as would allow a setoff in favor of the insurer against unearned premiums in its hands to diminish an arrears incurred by the insured. (Matter of Dynamic Electronics-New York, 120 F. Supp. 126 [S. D. N.Y., 1954].)
In the latter case, the bankruptcy trustee sought an order directing an insurer to turn over a refund on a canceled policy. The insurer claimed the right to set off a debt owed him by the bankrupt on the policy immediately prior to the one which was canceled. The court permitted the setoff. The main issue of the case was whether the debts were mutual within the meaning of section 68 of the Bankruptcy Act (U. S. Code, tit. 11, § 108), and this issue was decided in favor of the insurer. This is not the same kind of1 relationship which is presented in the matter now before this court.
Accordingly, the application for a turn-over order is hereby granted, and the said Howard C. Hegeman Agency, Inc. is hereby directed to turn over and pay to the assignee herein the sum of $947.