BUCKTHORN, LTD., Appellant-Respondent, v ROLLINS BURDICK HUNTER OF NEW YORK, INC., Defendant and Third-Party Plaintiff-Respondent-Appellant. EQUITY STEAMSHIP AGENCIES, LTD., Third-Party Defendant-Respondent.

First Department, May 30, 1985

### APPEARANCES OF COUNSEL

*George L. Graff* of counsel (*Emily A. Tabin* with him on the brief; *Milgram Thomajan Jacobs & Lee,* attorneys), for appellant-respondent.

*W. Donald Nyland* of counsel (*C. Peter Lambos* with him on the brief; *Lambos, Flynn, Nyland & Giardino,* attorneys), for third-party plaintiff-respondent-appellant.

*Robert W. Mullen* of counsel (*Dickerson, Reilly & Mullen,* attorneys), for third-party defendant-respondent.

### OPINION OF THE COURT

FEIN, J.

Plaintiff, a creditor's assignee, sues defendant, the broker for the interpleaded defendant Equity Steamship Agencies, for al-

leged conversion of insurance proceeds which defendant had received on behalf of Equity, to which plaintiff had claimed entitlement under various written agreements between plaintiff's assignor and Equity.

Plaintiff's president, Felzenberg, was a shipper who had done business with Equity. In 1981, as a result of Felzenberg's introduction and personal guarantee, Equity was able to obtain a $250,000 loan from Citibank, for which Equity's president, Emmans, gave a demand promissory note for the amount of the loan, as well as a lien on property and proceeds then or subsequently in Citibank's control on Equity's behalf. The note pledged to Citibank "any and all property and the proceeds thereof now or at any time(s) hereafter" held by Citibank for account of Equity, as collateral security for Equity's "payment of (i) the indebtedness evidenced hereby or by any note(s) which may be given in renewal or extension of all or any part of that indebtedness, and (ii) any and all other obligations and/or liabilities, direct or contingent, of the undersigned to the Bank, due or to become due, whether now existing or hereafter arising".

Eight months later, in February 1982, Citibank loaned Equity an additional $200,000, again at Felzenberg's behest, with Emmans delivering an identical note. Along with this second note Citibank obtained a general hypothecation agreement signed by Emmans, amplifying Citibank's right to apply any pledged collateral toward the satisfaction of the debt, if necessary.

Shortly thereafter, Equity was in need of additional financial backing in the form of a $250,000 letter of credit, to secure issuance of a bond for the release of a damaged vessel in Alabama. Inasmuch as this would raise Equity's total indebtedness to Citibank to $700,000, Citibank asked for additional security. Equity, through its broker (defendant), agreed to assign the proceeds of a pending insurance claim on this vessel (an anticipated $354,047.20) to Citibank. A $250,000 one-year letter of credit was thereupon issued.

The entire loan structure was thus built upon a personal relationship between the presidents of Equity and plaintiff, with Citibank extending credit to Equity based in part upon plaintiff's president's personal guarantee. However, Equity made no interest or principal payments on either loan, despite Citibank's demands on the notes, and the letter of credit remained outstanding, with $36,000 having been drawn against it by the bonding company's beneficiary.

In March 1983, Citibank learned that defendant was in receipt of the insurance proceeds Equity had assigned to Citibank

as collateral in consideration for issuance of the letter of credit. Defendant refused to turn these proceeds over to Citibank, even after Citibank promised to indemnify defendant against any claim by Equity. In August 1984, Citibank assigned its rights to these insurance proceeds to plaintiff, in exchange for payment of all of Equity's obligations. Plaintiff then commenced this action against defendant for the proceeds. Defendant interpleaded Equity as an adverse claimant. Equity's own claims to these proceeds, plus a variety of claims against plaintiff and its president, were severed as unrelated to the funds in issue here.

Defendant's opposition to plaintiff's summary judgment motion is based primarily on the statement by Equity's president that the hypothecation agreement was not intended to extend to the collateral security furnished against the letter of credit (namely, the insurance proceeds). Defendant asserts that Equity had been assured by Mulderrig, a Citibank officer, that all obligations referred to on plaintiff's summary judgment motion had been fully collateralized by plaintiff's president, and that Citibank would thus not look to Equity. Equity's signature was thus not needed on those obligations, but Emmans signed anyway based solely on this asserted oral assurance by Mulderrig. Such assertions directly contradict the written terms of the agreements, and thus are barred by the parol evidence rule (*Marine Midland Bank-S. v Thurlow,* 53 NY2d 381). "The rule of law which defeats defendants and makes this summary judgment valid is that which makes parol evidence inadmissible to vary the terms of a written instrument. Acceptance of defendants' version of the transaction could be accomplished only by letting defendant * * * give oral evidence directly contradicting the clear terms of a written agreement." (*Leumi Fin. Corp. v Richter,* 17 NY2d 166, 173.)

Generally, the parol evidence rule can be avoided only where there is ambiguity in the written agreement. The two promissory notes clearly stated that Equity pledged to Citibank all property and proceeds in the bank's possession for Equity's account, as collateral security against the current obligation as well as "any and all other obligations and/or liabilities * * * due or to become due, whether now existing or hereafter arising". The subsequent hypothecation agreement further conferred upon Citibank or its assignees a lien and security interest in all property of Equity then or thereafter coming under the control of the bank. Written agreements which are so clear and unambiguous on their face cannot be varied by oral agreements purporting to give a directly contrary impression (*Pomerance v*

*Nanuet Natl. Bank,* 57 AD2d 891, 892). Such is the very essence of the parol evidence rule.

The rule also operates to bar evidence of events which defendant asserts changed the import of the written agreements. For example, Equity asserts that the Federal District Court in Alabama canceled the letter of credit and ordered all underlying collateral released immediately. This is inaccurate. The Federal court order did not refer to the Citibank letter of credit. Actually, one of the two insurance bonds issued in reliance on the letter of credit remained in effect and was the basis upon which Citibank paid $36,000, drawn against Equity's outstanding letter of credit.

The hypothecation agreement clearly provides, in paragraph XII, that "none of its terms or provisions may be waived, altered, modified or amended except as the Bank may consent thereto in writing." The documentary evidence thus makes explicit what is implicit in the law (*see,* General Obligations Law § 15-301).

Equity has realized the benefits of its contractual agreements with Citibank. It cannot now be heard, by the introduction of parol evidence, to challenge those portions of the written agreements setting forth its obligations (*Bersani v General Acc. Fire Life Assur. Corp.,* 36 NY2d 457).

The rights defendant purports to assert against plaintiff herein are the rights of Equity vis-à-vis Citibank. The oral assurances in contradiction to the written agreements are alleged to have been given to Equity's president by a representative of Citibank. Such evidence is clearly barred by the parol evidence rule (*Marine Midland Bank-S. v Thurlow, supra,* at pp 388-389).

The order, Supreme Court, New York County (Alvin F. Klein, J.), entered August 24, 1984, denying plaintiff's motion for summary judgment and granting defendant's motion for discharge, with costs and disbursements but without attorneys' fees, upon payment of the disputed funds into court, should be modified, on the law, plaintiff's motion for summary judgment granted, and the order otherwise affirmed, with costs.

SANDLER, J. P., ASCH and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on August 24, 1984, unanimously modified, on the law, plaintiff-appellant-respondent's motion for summary judgment granted, and the order is otherwise affirmed. Plaintiff-appellant-respondent shall

12

recover of defendant and interpleading plaintiff-respondent-appellant and interpleaded defendant-respondent one bill of $75 costs and disbursements of the appeal and cross appeal.