---

Barr and Faerber (Elizabeth A. Haas, of counsel), Spring Valley, N.Y., for plaintiff.

Bleakley & Schmidt (William P. Harrington, of counsel), White Plains, N.Y., for defendant.

**SHEEHAN CARRIERS, INC., Plaintiff,**

v.

**JAMES H. BUCKLEY & SONS, INC., Defendant.**

**No. 86 Civ. 8689 (GLG).**

United States District Court, S.D. New York.

Nov. 12, 1987.

## OPINION

GOETTEL, District Judge:

In this diversity action, a New York insured sues a Massachusetts broker for retaining the proceeds of an insurance claim. Both parties move for summary judgment, the determination of which depends upon whether New York or Massachusetts law applies to the broker's activities. For the reasons stated below, we apply Massachusetts law and grant the defendant's motion for summary judgment.

## I. FACTS

The plaintiff, Sheehan Carriers, Inc., is engaged in the business of interstate trucking. It is a New York corporation, with its principal place of business in Suffern, New York. The defendant, James H. Buckley & Sons, Inc., is an insurance brokerage. It is a Massachusetts corporation, with its principal place of business in Springfield, Massachusetts.

In December of 1983, the plaintiff retained the defendant to obtain the insurance necessary to conduct its business. The defendant obtained, in Massachusetts, fleet liability insurance and other necessary coverage from the Insurance Company of North America ("INA").[1] After the policy went into effect, the plaintiff, experiencing financial problems, fell behind in its insurance premiums to INA. The plaintiff and defendant both were aware that a failure to pay these premiums would result in a cancellation of the policy, and that such cancellation would prevent the plaintiff from operating its business. Some time during 1984, defendant began paying monthly insurance premiums on behalf of the plaintiff to INA's Massachusetts office, and sending invoices to the plaintiff for these payments.

In or about July, 1984, a tractor owned by MTS Transportation Corporation[2] and leased to the plaintiff was involved in an accident in New Jersey. The tractor was towed by Vernon Collision Company[3] to a nearby repair facility in New York. As of January 24, 1986, Vernon had charged the defendant a total of $30,302.46 for repairs made on the tractor and for storage fees. Some time thereafter, Vernon sold the tractor to itself in settlement of the amount owed by the defendant.

Following the accident, the plaintiff filed a claim with INA. The claim was made through the defendant. Thereafter, INA, through its Massachusetts office, issued two checks totalling $17,211.26, representing the cost of the tractor repair less a $1,000 deductible. One of the checks was made payable to "Sheehan Carriers Inc.". The other check was made payable to "Sheehan Carriers Inc. and James H. Buckley & Son [sic] Inc.". The defendant indorsed the checks to itself and retained the insurance proceeds as a set-off against premiums owed it by the plaintiff.

The plaintiff states four causes of action requesting actual and exemplary damages for the defendant's allegedly tortious conversion of funds.[4] Among other defenses, the defendant claims that the plaintiff owed the defendant outstanding premiums in excess of the claim proceeds and that the defendant acted in accord with Mass.Gen. Laws Ann. ch. 175 § 22I (West 1987), which permits the retention of claim proceeds as a set-off against unpaid premiums. The defendant also asserts a counterclaim for $15,000, representing money still owed by the plaintiff after the set-off.

The plaintiff moves for summary judgment on the issue of the defendant's authority to offset unpaid premiums with insurance proceeds, reserving the issue of damages and the counterclaim for trial. The defendant cross-moves for summary judgment dismissing the plaintiff's complaint and granting the counterclaim.

## II. DISCUSSION

As jurisdiction in this case is based upon diversity of citizenship, this court must apply the substantive law of the forum state, *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), including its conflict of laws rules, *Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), in determining the parties' rights.

At issue in this case is whether the defendant was entitled legally to retain the proceeds of an insurance claim as a set-off against premiums it had paid. Upon examination of the relevant laws of Massachusetts and New York, we find that a clear conflict of laws exists. It is undisputed by the parties that where a broker is owed money by an insured for premiums paid by

---

1. INA is a Pennsylvania corporation, with a business office in Massachusetts.

2. MTS is a New York corporation.

3. Vernon is a New Jersey corporation.

4. The plaintiff's complaint is somewhat confusing. The plaintiff alleges "tortious conversion" in two of its causes of action and "improper and illegal seizure [of claim proceeds]" in the remaining two. We read all four of these allegations as tort claims, arising out of the relationship between the plaintiff and its broker and not from the contractual relationship between the insured and its insurance company, which is not a party to this action.

the broker, Massachusetts law seeks to protect the broker and allows such a set-off,[5] whereas New York law does not.[6] Plaintiff, concedes that if Massachusetts law governs, their complaint must entirely fail. Therefore, the clear issue before this court is to determine which state's law to apply in regulating the conduct at issue.[7]

The latest authoritative New York case on choice of law is *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985).[8] In *Schultz*, the court distinguished between the relative interests that are to be considered when the statutes in question relate to allocating losses and when they relate to regulating conduct (as in the case at bar)—a critical distinction overlooked by both parties in the instant case. The New York Court of Appeals held: "[W]hen the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of *the place of the tort* 'will usually have a predominant, if not exclusive concern'...." *Id.* 65 N.Y.2d at 198, 491 N.Y.

S.2d at 95, 480 N.Ed.2d at 684 (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 750, 191 N.E.2d 279 (1963)) (emphasis added). *Accord* Restatement (Second) of Conflict of Laws § 145 comment d, at 417–18 (1971). The *Babcock* language cited by the *Schultz* court is particularly instructive:

> Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place.

*Babcock*, 12 N.Y.2d at 483, 240 N.Y.S.2d at 750–51, 191 N.E.2d at 284–85. Restated in terms of the instant case, when the defendant's conduct in indorsing the claim pro-

---

5. Mass.Gen.Laws Ann. ch. 175 § 221 (West 1987), states in pertinent part:
   Any insurance company, broker or agent may retain an amount equal to any unpaid premium due on the policy under which a claim is being presented, when settling any such claim for an insured; provided, however, that the unpaid premium remains unpaid sixty days after the effective day of such policy or the date of the original billing thereof, whichever later occurs; provided further, that such unpaid premium shall be retained as against any lost payee or mortgagee named in said policy up to the amount of the unpaid balance owed to such loss payee or mortgagee on the date the loss occurred which gave rise to said claim until the premium payment is made to said insurance company, broker, or agent by the insured, loss payee or mortgagee....
   We note that, on its face, the Massachusetts statute allows a broker to retain claim proceeds until premium payments owed are paid. The statute does not expressly authorize a broker to indorse a claim proceed check. At oral argument, however, both parties agreed that such activity is authorized by the Massachusetts statute. We, therefore, do not take issue with the asserted reading of the statute.

6. N.Y. Ins. Law § 2120(a) (McKinney 1985), states:
   Every insurance agent and every insurance broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent

or insurance broker, and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity.

7. The plaintiff argues that a close examination of the insurance policy shows the parties clearly intended that the policy be issued in accordance with the laws of New York. Factually, this proposition is dubious. Furthermore, in light of its complaint, discussed *supra* note 4, the plaintiff's emphasis on the insurance contract is misplaced. Therefore, any analysis of the conflict of laws issue must surround the alleged tort, and not the terms of the insurance contract.

8. The plaintiff argues that under traditional conflict of laws tests, New York law will apply here. The plaintiff characterizes this traditional analysis as that set forth in *Oakley v. National Western Life Ins. Co.*, 294 F.Supp. 504 (S.D.N.Y. 1968), and *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954). These cases assert that the law of the state "which has the most significant contacts with the matter in dispute" is the law to be applied. 308 N.Y. at 160, 124 N.E.2d 99. Plaintiff's reliance on these cases does not adequately reflect the current state of New York choice of law loss allocation rules, and more importantly, does not state the proper choice of law standard on conduct regulating cases, as here.

ceeds as a set-off against unpaid premiums is in issue, the law of the jurisdiction in which that allegedly wrongful conduct occurred should, in most every case, be controlling.

The underlying rationale of the *Babcock–Schultz* approach, as it applies to conduct regulation, is easily explained. As this court said in *Morgan Guaranty Trust Co. v. Garrett Corp,* 625 F.Supp 752 (S.D.N.Y. 1983), *aff'd in part sub nom., Woodling v. Garrett Corp.,* 813 F.2d 543 (2nd Cir.1987): "When conflicting laws relate to standards of conduct, the law of the locus jurisdiction should take precedence because of the 'admonitory effect that applying its law will have on similar conduct in the future.'" *Id.* at 757 n. 7 (quoting *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 685). Further, the locus jurisdiction has a prevailing interest in protecting the reasonable expectations of the parties who relied on its law to govern their primary conduct. *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 685.

There is no doubt that the place of the alleged tort in this case was Massachusetts. The plaintiff was deprived of its funds in Massachusetts. The policy on which the claim was made was issued in Massachusetts. The claim was filed in Massachusetts. The proceed checks were issued in Massachusetts. The alleged "conversion" took place in Massachusetts by a Massachusetts domiciliary. The only conduct relative to the claim which took place within New York was the tractor repair and the filing of the claim by the plaintiff from its New York office. These facts alone, however, do not weigh significantly on the alleged tort, and do not compromise the locus jurisdiction's precedence and prevailing interest in regulating the conduct at issue.

Furthermore, the plaintiff here received substantial benefit from its broker's reliance on Massachusetts law. Undoubtedly, the defendant would not have made premium payments on the plaintiff's behalf had it not reasonably relied on the protection afforded that activity by Massachusetts law. Had the defendant not made payments for the plaintiff, the plaintiff's insurance policy would have lapsed and no claim would have been possible. Under applicable insurance laws, the plaintiff would have been unable to operate its business altogether without liability insurance. These facts raise considerations as to "the 'fairness' of applying [New York] law where a nonresident or even a resident has patterned his conduct upon the law of the jurisdiction in which he was acting." *Miller v. Miller,* 22 N.Y.2d 12, 19, 290 N.Y.S. 2d 734, 740, 237 N.E.2d 877, 881 (1968).

Consistent with the above-stated *Babcock–Schultz* rule, we hold that Massachusetts law must apply to the broker's conduct in this case. Therefore, the defendant's activities were entirely lawful.

### Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment is denied, and the defendant's cross-motion for summary judgment is granted. The defendant has asserted various other grounds for dismissal. Holding as we do that Massachusetts law applies, we need not address those concerns.

As factual issues still exist with respect to the amount of money owed the defendant for unpaid premiums above the set-off, the defendant's motion for summary judgment granting the counterclaim for additional funds is denied and that issue is reserved for trial.

SO ORDERED.